IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Case No. TDC-20-0033 |
| PATRIK MATHEWS | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE
## FROM TELEPHONE SEARCH AND TRACKING WARRANTS

The defendant, Patrik Mathews, through his attorney Joseph A. Balter, hereby moves this Honorable Court to issue a pre-trial ruling barring the government from admitting any tangible and derivative evidence seized in connection with the execution of search and seizure warrants. As grounds therefore, he states the following:

1. The defendant, Patrik Mathews, is charged with being an Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(5) and Transporting a Firearm and Ammunition in Interstate Commerce with Intent to Commit a Felony, in violation of 18 U.S.C. § 924(b).

2. According to discovery materials, warrants were issued in connection with the following searches:

    a. Search and tracking warrants for Target Telephone 2 – the defendant's phone: IMEI number: 015416000447251 for phone numbers: (443) 941-4950 and (912) 423-2846.

    b. Search and tracking warrants for Target Telephone 3, believed to be the defendant's replacement phone assigned call number (410) 924-2225.

   c. Defendant's email accounts: snakepunished14@gmail.com (Target-3); fuchmccock@gmail.com (Target-4); Jeremymiller138@gmail.com (Target-5); Patrikmathews47@gmail.com (Target-15).

3. The defendant has standing to contest the search and seizure warrants. *Rakas v. Illinois,* 439 U.S. 128 (1978).

4. The search warrants were issued in violation of the Fourth Amendment to the United States Constitution, because the affidavits underlying the warrants did not establish probable cause to believe evidence of the crimes named in the warrant application would be found. *See Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000) ("The fundamental constitutional principle that search warrants must be founded upon probable cause derives from the language of the Fourth Amendment itself, which provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"); *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (officer seeking issuance of search warrant must present affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause"; probable cause requirement demands that officers demonstrate "fair probability" that evidence of crime will be found at particular place); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (probable cause means "more than bare suspicion").

5. Between October 22, 2019 and November 18, 2019, search warrants were authorized to track the location of the defendant's phone and email accounts and disclose all provider information. Search Warrant Affidavit from 10-22-19 [hereinafter "Affidavit"] at ¶ 2. The first of these warrant applications was from October 22, 2019, which covered the defendant's phone and email accounts: snakepunished14@gmail.com (Target-3);

fuchmccock@gmail.com (Target-4); and Jeremymiller138@gmail.com (Target-5). *Id.* On November 8, 2019, an application to renew these warrants was authorized based on the same information from the original affidavit as pertaining to Mr. Mathews' phone and email accounts. On December 13, 2019, an application to renew the existing warrants was authorized as well as a new warrant for the search of TE-15 - Patrikmathews47@gmail.com.

The affidavits stated that "probable cause exists to believe that the requested warrants will lead to evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 2101 (Inciting a Riot); 18 U.S.C. §§ 371 and 249 (Conspiracy to Commit and Attempt to Commit a Hate Crime); 21 U.S.C. § 841 (Distribution of Controlled Substances); and 8 U.S.C. § 1324 (Bringing in and Harboring Certain Aliens) (collectively, the "TARGET OFFENSES"), that have been committed, are being committed, or will be committed by BRIAN MARK LEMLEY, a/k/a "Cantgoback" ("LEMLEY"), RINALDO NAZZARO("NAZZARO"), PATRIK MATHEWS ("MATHEWS"), WILLIAM GARFIELD BILBROUGH IV ("BILBROUGH"), and others." Affidavit at 4.

The first section of the affidavits cover the background of the Base and Rinaldo Nazzaro ("Norman Spear"). The affidavits describe the Base chat room and how certain members such as "Rimbaud" expressed the general desire to commit violence in messages to the fifty-member group chat. Affidavit at ¶ 18.d.i. "Rimbaud" and "Poilu" engaged in a specific conversation supporting violence and acceleration. Affidavit at ¶ 18.d.ii. Additionally, the Affidavit discussed Nazzaro's Gab and Twitter accounts where he posted various extremist statements spanning back to 2016. Affidavit at ¶ 20-21. The Affidavit went on to discuss the Base training camps and co-

defendants, Lemley and Billbrough's trip to Georgia to attend one of these events in which some members took a controlled substance: Adderall. Affidavit at ¶ 31.

The section of the Affidavit relating to Patrik Mathews and his phone and email accounts ("Canadian member of the Base") was short and failed to provide evidence that the search of Mr. Mathews' phone and email accounts was likely to provide evidence of the listed crimes in the warrant application. Affidavit at ¶ 36-53. The Affidavit stated that on or about August 27, 2019, the Canadian Aimed Forces relieved Mathews of duty as a result of a newspaper article exposing him as a member of the Base. Affidavit at ¶ 36. Approximately one day later, Mathews was reported missing to the RCMP. Affidavit at ¶ 37. On or about September 2, 2019, Mathews' pickup truck was found abandoned in proximity of Piney, Manitoba, Canada, near the Manitoba/Minnesota border with the United States. *Id.*

Meanwhile, agents had already been tracking Brian Lemley's phone (TT-1), which allowed agents to obtain a Chesapeake Bay Bridge Tunnel photo and video footage from toll lanes. Affidavit at ¶ 36. The photo and video footage obtained showed Lemley driving his Chevrolet Colorado ZR2 traveling with a passenger who appeared to be Mathews. *Id.* Additionally, cell tower location data identified Mathews' TT-2 text messages routing through his location in Macon, Georgia from September 12, 2019 through October 17, 2019, indicating that he was staying at the same location agents observed Lemley and Mathews enter on September 15, 2019. Affidavit at ¶ 45.

Therefore, agents already had all the necessary information to locate the defendant. Nothing in any of the affidavits spanning from October 18, 2019 through December 13, 2019

indicated that Mathews intended to accomplish anything but reside in the United States and find a job in construction. *See* Affidavit from 11-8-19 at ¶ 79.

6. Probable cause did not exist to show that Mr. Mathews' phone or email accounts would show violations of 18 U.S.C. § 2101 (Inciting a Riot); 18 U.S.C. §§ 371 and 249 (Conspiracy to Commit and Attempt to Commit a Hate Crime); or 21 U.S.C. § 841 (Distribution of Controlled Substances). Existing evidence led agents to discover Mr. Mathews' location and they knew he was an illegal alien and could have arrested him.

**A. The Affidavits Failed to Provide Probable Cause Under 18 U.S.C. §§ 2101, 371 and 249 Because the Statements Made Were Free Speech and Did Not Lead to Imminent Violence.**

The search affidavit information describing statements by other members of the Base in the Base group chat and Nazzaro's past Twitter and Gab posts fail to support probable because such statements are constitutionally protected free speech. "The Brandenburg test precludes speech from being sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015) (en banc).

In the current affidavits, the government selected Rinaldo Nazzaro's most explicit Twitter and Gab posts over a two-year span to show that he intended to incite violence, despite the fact that no evidence suggests actual imminent violence resulted from these posts. Affidavit at ¶ 20-21. Additionally, the affidavits selected the most dangerous sounding statements from the approximate fifty-person group chat to quote members such as "Rimbaud" who stated, "I'm all

about violence, but I want to gather with people and plan something out ... Maybe some form of bombing, or something a bit more destructive." Affidavit ¶ 18.d.i. Even such extreme statements like this one clearly fail to meet the imminence requirement of Brandenburg and likely also fail under actual incitement of violence.

Further, the government cherrypicked the most inflammatory statements in the affidavits, while excluding the countless times Nazzaro and others told members of the Base not to do anything illegal. Recently in *Nwanguma v. Trump*, the Sixth Circuit assessed whether President Trump intended to incite a riot when he exclaimed, "get 'em out of here[,]" referring to protestors at a political rally. 903 F.3d 604, 608 (6th Cir. 2018). In this case, it was argued that Trump's statement was likely to result in the imminent use of violence because the protestors that were surrounded by a hostile crowd who promptly assaulted them. *Id.* at 610. Ultimately, the court found, "As to how the offensive words were said, we know, most relevantly, by plaintiffs' own allegations, that the words were accompanied by the admonition, 'don't hurt 'em.' That this undercuts the alleged violence-inciting sense of Trump's words can hardly be denied." *Id.* at 612.

In the present case, the statements made by other members of the Base were not likely to result in imminent violence and fail Brandenburg on that alone. Additionally, the most vile statements were included, while numerous mitigating statements discouraging violence and illegal activity were excluded from the affidavits.

To present probable cause that the search of Mr. Mathews' phone and email accounts would provide evidence of conspiracy to commit a hate crime or incite riots, the government would at the very least need to show probable cause that the Base had imminent intent to commit such crimes, which was not revealed in the affidavits. Therefore, statements made by Base

members in the group chat and Nazzaro's social media posts fit squarely in the category of constitutionally protected free speech.

    **B. Inflammatory Statements Made by Other Members of the Base Chat Group Fail to Provide Probable Cause for Why Mr. Mathews' Phone and Email Accounts Were Likely to Provide Evidence of a Crime.**

The inflammatory statements presented in the affidavits were cherrypicked from a broad group chat that included approximately fifty members. While people could speak freely in the main chat, many of the members of the group did not even know or communicate with many of the other members. Given, the Base was designed to be decentralized into smaller local groups, the main chat provided an atmosphere where members could essentially post anything to anyone and new unvetted members would come and go. There is no evidence that Mr. Mathews even spoke with or knew "Rimbaud" or Pouli" who were cited in the affidavits as making some of the most inflammatory statements.

To allow the government to authorize the tracking of phone and email accounts, merely on the basis that other people in the same chat group made hateful statements (which were often for the purpose of bragging and one-upping each other) overextends the government's power to intrude on individual privacy in violation of the Fourth Amendment and creates serious First Amendment issues. This would be akin to allowing the search of every person's email accounts, based on the statements of one person on a large listserv. There is no evidence that Patrik Mathews even read the conversations between "Rimbaud" and "Pouli" or Nazzaro's Twitter posts from years ago. This information is extraneous and has no connection to the defendant or why his phone and email accounts would likely contain evidence of the crimes listed in the warrant applications.

Accordingly, the government's assertion that evidence of intent to incite riots, commit hate crimes, or distribute controlled substances is too attenuated and disconnected from Mr. Mathews to have substantive value in generating probable cause. No individual excerpts from the defendant's statements made in the Base chat group were included in these warrant affidavits. While information obtained from the defendant's phone and email accounts could potentially show that he was being harbored, such evidence was not necessary, given the government already had a picture of Mr. Mathews in Mr. Lemley's truck taken on September 14, 2019 and identified the fact that Mr. Mathews was dropped off in Macon, Georgia on September 15, 2019. Affidavit pp. 26-27; 29.

Evidence obtained from these warrants should be suppressed because the affidavits failed to provide probable cause that Mr. Mathews' phone and email accounts would provide evidence of the suspected crimes listed in the affidavits. The statements from other Base members in a broad group chat and Nazzaro's personal Twitter posts are (1) constitutionally protected free speech and (2) are too attenuated and disconnected from Mr. Mathews to lead a reasonable officer to believe evidence of these crimes would be discovered through the search of his phone and email accounts. If such attenuated evidence were allowed to support search and location-tracking warrants, this would greatly expand government power, while limiting privacy rights under the Fourth Amendment. Such precedent could lead to the search of all members of large Facebook or other social media groups based on the statements of one or two unknown participants, leading to serious infringements of the First and Fourth Amendments.

7.      Accordingly, the search affidavits were so deficient that no objectively reasonable officer could have relied in good faith on the legality of the search warrant. *See United States v.*

*Leon*, 468 U.S. 897, 923 (1984) (when warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" it cannot be relied upon in good faith) (quotation omitted).

8.  Mr. Mathews respectfully requests that this Court issue a pre-trial ruling barring the government from admitting at trial evidence obtained in connection with the unlawful search warrants.

**WHEREFORE**, the defendant requests that this Court grant an Order of Suppression on the grounds alleged herein and any other ground that may become apparent upon a hearing on the motion.

Respectfully submitted,

/S/
_____
JOSEPH A. BALTER        #04496
Law Office of Joseph A. Balter, LLC
Mt. Washington Mill
1340 Smith Avenue, Ste 200
Baltimore, Maryland 21201
Telephone:  (410) 375-7082
Facsimile:   (410) 779-1201
Email:          joseph@josephbalterlaw.com

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, the defendant requests a hearing on this motion.

/S/

_____
JOSEPH A. BALTER        #04496

–12–