IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA	*

v.	*	Criminal Case No. TDC-20-0033

PATRIK MATHEWS	*

\* * * * * * * * * * * * *

## MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE OF THE CCTV AND SNEAK AND PEEK WARRANTS FOR 29 WENARK DRIVE

The defendant, Patrik Mathews, through his attorney Joseph A. Balter, hereby moves this Honorable Court to issue a pre-trial ruling barring the government from admitting any tangible and derivative evidence seized in connection with the execution of search and seizure warrants. As grounds therefore, he states the following:

1. The defendant, Patrik Mathews, is charged with being an Alien in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(5) and Transporting a Firearm and Ammunition in Interstate Commerce with Intent to Commit a Felony, in violation of 18 U.S.C. § 924(b).

2. Warrants were issued in connection with the following searches: December 11, 2019 "sneak and peek" search warrant of 29 Wenark Drive, Apartment 1, Newark, Delaware 19713 ("Target Apartment") and the December 11, 2019 warrant authorizing CCTV video surveillance of the same Target Apartment.

3. The defendant has standing to contest the search and seizure warrants. *Rakas v. Illinois,* 439 U.S. 128 (1978).

4. The search warrants were issued in violation of the Fourth Amendment to the United States Constitution, because the affidavits underlying the warrants did not establish probable cause to believe evidence of the crimes named in the warrant application would be found. *See Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000) ("The fundamental constitutional principle that search warrants must be founded upon probable cause derives from the language of the Fourth Amendment itself, which provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"); *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (officer seeking issuance of search warrant must present affidavit containing facts sufficient to "provide the magistrate with a substantial basis for determining the existence of probable cause"; probable cause requirement demands that officers demonstrate "fair probability" that evidence of crime will be found at particular place); *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (probable cause means "more than bare suspicion").

5. The CCTV video surveillance search of the Target Apartment violated the Fourth Amendment because this highly intrusive search was entirely unnecessary, given agents already discovered the necessary evidence of the purported crimes via traditional methods. Courts have held that warrants authorizing video surveillance require higher constitutional standards as constructed under Title III. *See United States v. Falls*, 34 F.3d 674 (8th Cir. 1994); *United States v. Koyomejian*, 970 F.2d 536 (9th Cir.), cert. denied, 113 S. Ct. 617 (1992); *United States v. Mesa-Rincon*, 911 F.2d 1433 (10th Cir. 1990); *United States v. Cuevas-Sanchez*, 821 F.2d 248 (5th Cir. 1987); *United States v. Biasucci*, 786 F.2d 504 (2d Cir. 1986), cert. denied, 479 U.S. 827 (1986); *United States v. Torres*, 751 F.2d 875 (7th Cir. 1984), cert. denied, 470 U.S. 1087

(1985). According the government's warrant application did include exhaustion provisions, but evidence shows that the video surveillance was not necessary to prove the relevant target offenses.

The Affidavit listed the "Target Offenses" as "violations of 8 U.S.C. § 1324 (Bringing in and Harboring Certain Aliens, and conspiracy to do so); 18 U.S.C. § 922(g)(5) (alien in possession of firearm); 21 U.S.C. § 841 (Distribution of Controlled Substances); 18 U.S.C. § 2 (aiding and abetting violations of 8 U.S.C. § 1324 and 18 U.S.C. § 922(g)(5)); 18 U.S.C. § 2101 (Inciting a Riot); 18 U.S.C. § 249 (Attempt to Commit a Hate Crime); and 18 U.S.C. § 371 (Conspiracy to Commit Violations of §§ 2101, 249, and 922(g)(5))." Affidavit at ¶ 2.

As previously discussed, the affidavits failed to provide probable cause related to conspiracy to commit hate crimes or incite riots because the information provided was constitutionally protected free speech and there was no imminent plan to commit such acts. The relevant target offenses relate to alien in possession of a firearm and Brian Lemley's harboring of Patrik Mathews.

### A. The CCTV Surveillance Violated the Fourth Amendment Because It Was Unnecessary, Given Agents Already Knew and Gathered Necessary Evidence to Prove Lemley Was Harboring Mathews.

The Affidavit explicitly addresses the "Need for Monitoring and Recording of Visual, Non-Verbal Conduct/ Alternative Investigation Techniques." Affidavit, p. 64. In paragraph 120 of this section, the Affidavit states that the use of undercover officers, physical surveillance, GPS monitoring, and other methods effectively identified Mathews location and those who transported and harbored him. Affidavit at ¶ 120. Therefore, the government effectively

conceded that it did not need video surveillance to determine who was harboring Mathews in violation of 8 U.S.C. § 1324.

The government contends, though, that the CCTV surveillance was necessary to determine whether Mr. Mathews possessed a firearm (believed to be inside a rifle bag), rather than Mr. Lemley. *Id.* The Affidavit also mentions identifying co-conspirators who harbored Mathews as well as the presence of Adderrall, which both seem highly inappropriate reasons for a search of this nature. Giving a friend an Adderrall pill is certainly not the type of offense that justifies 24-hour video surveillance of the home and other methods of investigation would be better suited for finding other Base members that may have assisted in harboring Mathews than video surveillance in Mathews and Lemley's residence.

Accordingly, the crux of the government's argument in support of the CCTV surveillance is to determine whether Mr. Mathews possessed a gun in violation of 18 U.S.C. § 922(g)(5). The government contends that without video surveillance, it cannot determine whether the suspected rifle was illegally possessed by Mr. Mathews or legally possessed by Mr. Lemley. Affidavit at ¶ 120. This reasoning is flawed because it is unlikely that video surveillance within the home would truly show who possessed the firearm and there are much less intrusive methods of traditional surveillance and investigation that would have been more effective if given the chance.

**B. Agents Failed to Exhaust Traditional Methods of Surveillance Which Were Clearly Effective and Proved to Continue to be Effective.**

Paragraph 122 of the Affidavit discusses exhaustion and why traditional methods of investigation "failed to fully achieve the goals and objectives of this investigation, or appear unlikely to succeed if tried, or are too dangerous to be tried." Affidavit at ¶ 122.

Realistically, this makes little sense. Agents were already surveilling Mr. Lemley and Mr. Mathews on a daily basis, following Mr. Mathews to work nearly every day, as he worked construction. Agents were aware that Mr. Lemley regularly visited gun ranges and Mr. Lemley and Mr. Mathews regularly went out and ate and shopped together. Additionally, Mr. Mathews and Mr. Lemley shared a wealth of information with the undercover agent and Mr. Lemley replied to the undercover agent when messaged in the Wire messaging application. Certainly, it was only a matter of time before Mr. Lemley or Mr. Mathews brought the suspected new rifle to the gun range or the undercover agent would be able to extract the necessary information without installing 24-hour surveillance within their residence.

The facts that the investigation could have been successfully conducted without the use of the highly intrusive CCTV installation is readily apparent when events following the installation are considered. The agents certainly could have inferred that the investigative measures already in place, including the successful use of an undercover office, would lead to the realization of the goals of the investigation. These realities were proven on January 8, 2020 when Brian Lemley was observed at Elk Neck Shooting Range firing the new rifle and again on January 13, 2020 when Lemley, Mathews, and the undercover agent went to the range and practiced shooting together. To accomplish this meeting, the agent simply messaged Mr. Lemley and told him he would be in the area and asked if he wanted to meet up. Mr. Lemley immediately responded by inviting the agent to come to the home where Lemley and Mathews resided and he provided the agent with the address, showed him the rifle and told him everything about it, how he purchased it, where he obtained the lower receiver and anything else the government wanted to know about the rifle.

This shows that the CCTV warrant was extremely premature and unnecessary. Rather than pursue investigative techniques that had been working very well, the government applied for 24-hour CCTV surveillance of the residence upon the site of a rifle bag.

In equally alarming fashion, the government applied for both the CCTV warrant and the sneak-and-peek warrant on the same day—December 11, 2019. The Affidavit for the CCTV warranted stated:

> At this point, law enforcement agents intend to apply for a "sneak-and-peek" search warrant at the Target Residence. Execution of such a warrant would help determine whether a firearm is present in the apartment, as well as allow agents to appropriately inspect and install surveillance equipment, and ensure that the surveillance equipment (which I anticipate will be installed through the wall from the adjacent apartment) is not discernible from within the Target Residence. However, execution of the "sneak-and-peek" search warrant would not meet all the objectives of the investigation, as further described herein.

Affidavit, Note 15. Without even reviewing the evidence, the government assumed that the thorough search of the residence and subsequent search of all of the hard drives and electronic evidence obtained from the residence would not meet all of their objectives. This approach defied the requirements of exhaustion because the government could not possibly know if the evidence obtained from the sneak-and-peek would meet their objectives without first discovering such evidence and reviewing it. The very definition of exhaustion is to attempt one method of surveillance, determine whether it was successful, and then apply for a more intrusive method, only when absolutely necessary.

The CCTV search violated the Fourth Amendment because the warrants authorizing video surveillance apply higher constitutional standards as constructed under Title III. These standards, which include exhaustion of traditional surveillance methods and necessity were not

met. Accordingly, the search was unlawful and evidence obtained from the CCTV surveillance should be suppressed.

7. If any evidence relied upon in support of a search warrant was obtained by a Fourth Amendment violation, the subsequent search warrant and search are also deemed invalid under the "fruit of the poisonous tree" doctrine. See *Wong Sun v. United States*, 371 U.S. 471 (1963). The affidavits for the CCTV and sneak and peek warrants relied on evidence obtained from prior warrants that lacked probable cause in violation of the Fourth Amendment. Mr. Mathews also incorporates those arguments made in connection with the other motions to suppress evidence that the search warrants affidavits were based on information derived from constitutionally protected free speech which should not serve as the basis for a warrant.

8. Additionally, the search affidavits were so deficient that no objectively reasonable officer could have relied in good faith on the legality of the search warrant. *See United States v. Leon*, 468 U.S. 897, 923 (1984) (when warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" it cannot be relied upon in good faith) (quotation omitted).

8. Mr. Mathews respectfully requests that this Court issue a pre-trial ruling barring the government from admitting at trial evidence obtained in connection with the unlawful search warrants.

**WHEREFORE**, the defendant requests that this Court grant an Order of Suppression on the grounds alleged herein and any other ground that may become apparent upon a hearing on the motion.

Respectfully submitted,

/S/
_____
JOSEPH A. BALTER     #04496
Law Office of Joseph A. Balter, LLC
Mt. Washington Mill
1340 Smith Avenue, Ste 200
Baltimore, Maryland 21201
Telephone:   (410) 375-7082
Facsimile:   (410) 779-1201
Email:           joseph@josephbalterlaw.com

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, the defendant requests a hearing on this motion.

/S/

_____
JOSEPH A. BALTER    #04496